**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A2336. ALR OGLETHORPE, LLC et al. v. HENDERSON et al.

BARNES, Presiding Judge.

This suit arose after ALR Oglethorpe, LLC, bought two parcels of land and then discovered after the closing that one of the parcels was still burdened by a recorded access easement. ALR and five individuals who had invested in related limited liability companies[1] (collectively, ALR) sued C. Gerald Henderson, Title Resources Corp. – Savannah, and Title Resources Corporation (collectively, Henderson) for professional negligence in preparing the title examination and abstract. The trial court granted Henderson's motion to dismiss, finding that the statute of limitation had run before suit was filed and also finding that the suit was barred by the doctrine of res judicata. ALR appeals, and because we agree that the suit was barred by the doctrine of collateral estoppel, we affirm.

---

[1] The individual investors are Jules Paderewski, Bernard Portman, Charles Idleson, Cora Bett Thomas, and Allison Stanley as the executor of Danny Stanley's estate.

The parties do not dispute the underlying facts pertinent to this appeal. ALR retained the law firm Coleman Talley LLP to perform a title search on two contiguous tracts of land along the south bank of the Savannah River for a development project known as the Savannah River Landing. Coleman Talley asked Fidelity National Insurance Company to prepare a title commitment for the properties, and Fidelity hired an attorney, R. E. Hodges, to prepare a title abstract. Hodges then hired Henderson, whose abstract revealed the existence of an access easement across one of the tracts but failed to identify all of the parties benefitted by the easement across the tract.

Fidelity listed the access easement on a schedule of exceptions included with the title commitment, and Coleman Talley drafted an agreement to terminate the easements signed only by the benefitted parties who were identified in the title abstract. Fidelity then removed the exception to the title commitment and the property sales closed in May 2006.

In fall 2007, the individual investors loaned $4.2 million to Oglethorpe Landings Holdings, LLC, which was ALR's sole member. The money was intended to be a short-term bridge loan for development costs until other financing could be arranged. But when ALR presented a proposed subdivision plat to the Savannah

2

Metropolitan Planning Commission, a contiguous property owner objected because the proposed plat provided no means of access to that owner's property, which was still benefitted by a recorded easement over property now owned by ALR. As ALR said in its complaint, the still-existing "easement rights prohibited the approval of the subdivision map, and therefore brought the entire Savannah River Landings project to a halt." Lacking an approved subdivision plat, ALR had difficulty marketing the project.

ALR alleged in its complaint that the individual investors learned of the easement issue in January 2008. The title insurance company Fidelity negotiated the termination of the remaining easement rights, which were relinquished in June 2008. The Savannah River Landing project ultimately failed, and multiple suits against various parties were filed, transferred, dismissed and reinstated. Some of the suits overlapped, with claims against some defendants proceeding in two courts simultaneously.

For example, in September 2009 in the State Court of Chatham County, ALR sued Coleman Talley for malpractice and sued the property sellers for failing to disclose the outstanding easement. The sellers filed a third-party complaint against the title insurance company, which filed and then dismissed a fourth-party complaint

against R. E. Hodges, Jr., LLC, the company it hired to prepare the title abstract. ALR filed its own complaint against Hodges as a fourth-party defendant, and Hodges was served on November 16, 2010.

Hodges moved to dismiss ALR's claim against him, arguing that he had performed the title abstract before March 2006, and therefore the four-year statute of limitation had expired at least by March 2010. On January 24, 2012, the Chatham County court granted Hodges' motion to dismiss, holding that the statute of limitation had expired before Hodges was sued.

The Chatham County court subsequently granted summary judgment to the property sellers in October 2012, who were the only defendants residing in Chatham County, and the case was transferred to the State Court of Fulton County, one of Coleman Talley's counties of residence.[2] ALR appealed the grant of summary judgment to the property sellers, and this court affirmed that judgment without opinion in *ALR v. Peeples*, 334 Ga. App. ___ (Case Number A15A1358, decided Nov. 20, 2015). Appeals

---

[2] The record in Court of Appeals Case Number A15A1358 includes a consent order issued in October 2014 by the Fulton County trial court dismissing with prejudice ALR's claims against Coleman Talley.

4

Meanwhile, on January 6, 2012, ALR filed another suit in Chatham County against Coleman Talley and Henderson, which is before us in this appeal. ALR attached expert affidavits to its complaint, averring that the law firm had ethical conflicts related to its representation of the individual plaintiffs and that all of the defendants had breached the applicable standard of care in failing to discover and disclose the easement that still burdened the property after ALR bought it. ALR alleged that it lost potential sales as a result of its failure to gain the city's approval of its development plan due to the then-existing easement rights burdening one of the two tracts.

As previously mentioned, Henderson moved to dismiss the claims against him, arguing that the four-year statute of limitation began to run on the claim when the title examination was completed, which was at the latest March 2006. Therefore, under any set of facts as pled, he asserted, the suit filed in January 2012 was time-barred. He also argued that the allegations against him were res judicata based on the previous Chatham County case alleging malpractice against Hodges based on the same title examination and abstract as the current case.

In February 2015, ALR filed a motion seeking permission to add itself as an additional plaintiff in its capacity as Coleman Talley's assignee. ALR represented that

it had settled its claims against Coleman Talley in September 2014 and had taken an assignment of the firm's claims against Henderson. Henderson subsequently consented to the motion to add ALR in its capacity as assignee of Coleman Talley's claims.

In June 2015, the trial court issued the order now on appeal, granting Henderson's motion to dismiss the initial claims of ALR, although not dismissing ALR's claims against Henderson in its capacity "as assignees of Coleman Talley, LLP, and its insurer," which were not the subject of the motion to dismiss. The trial court found that the suit involved a title examination that took place at least by March 20, 2006, when Coleman Talley prepared an agreement terminating the easement rights of the benefitted parties listed in the title abstract, that the applicable statute of limitation was four years, and that the statute of limitation expired no later than March 20, 2010, long before this suit was filed. The court also found that the claims against Henderson were barred by the doctrine of res judicata, based on the previous suit against the property sellers and the adjudication on the merits of ALR's claims against Hodges.

1. ALR asserts on appeal that the trial court erred in granting Henderson's motion to dismiss based on the doctrine of res judicata. While we conclude that res

judicata does not apply here, collateral estoppel does, and thus we affirm the trial court under the "right for any reason" rule.

> The law of res judicata and collateral estoppel is somewhat confusing, primarily due to our failure to clearly and consistently distinguish the two separate doctrines. The former, also known as claim preclusion, requires a plaintiff to bring all his claims against a party (or its privies) arising out of a particular set of circumstances in one action; while the latter, sometimes called issue preclusion, prevents relitigation of an issue already litigated by the parties (or their privies). In other words, under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Sorrells Constr. v. Chandler Armentrout & Roebuck, PC*, 214 Ga. App. 193, 193-194 (1) (447 SE2d 101) (1994). See also OCGA § 9-12-40; *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006). "[U]nlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." (Citation and punctuation omitted.)

7

*Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010).

(a) *Issue preclusion.* ALR argues that res judicata does not apply to bar its claim in this case because its causes of action are not identical in both cases. The prior case alleged only professional malpractice, and this case also alleges negligent misrepresentation and breach of contract.

As to the professional malpractice claim, the causes of action are obviously identical. ALR is correct, however, that the causes of action in both cases are not identical,"and that, strictly speaking, the doctrine of res judicata does not apply." *Body of Christ*, 287 Ga. at 487. "The fact that the subject matter of different lawsuits may be linked factually does not mean that they are the same 'cause' within the meaning of OCGA § 9-12-40. For that doctrine to act as a bar, the cause of action in each suit must be identical." (Citation and punctuation omitted.) *Morrison v. Morrison*, 284 Ga. 112, 115 (3) (663 SE2d 714) (2008).

But "the rule with reference to the doctrine of estoppel by judgment[, or collateral estoppel,] is somewhat different, in that there can be an estoppel by judgment whenever there has been litigation between the same parties, even though based upon a different cause of action, as to such matters only as were necessarily or

8

actually adjudicated in the former litigation." *House v. Benton*, 42 Ga. App. 97, 97-98 (155 SE 47) (1930). See also *Boozer v. Higdon*, 252 Ga. 276, 278 (1) (313 SE2d 100) (1984).

The trial court in this case, which also heard and decided the prior case, noted that the claims in both cases relied "on precisely the same title examination as Plaintiffs relied on in the first action against defendant R.E. Hodges, Jr., LLC." The current litigation, although framed to include different causes of action, can only survive if the claim against Henderson falls within the statute of limitation, and that question is determined by Henderson's relationship with Hodges. In the previous litigation, the court determined that the action against Hodges was barred by the running of the statute of limitation. "This litigation therefore involves [a determinative] issue that had been resolved on the merits in prior litigation, satisfying one aspect of collateral estoppel." *Body of Christ*, 287 Ga. at 487.

(b) *Identity of parties.* ALR argues that Hodges and Henderson were not privies merely because they were both parties to a contract, contending that "their interests in this litigation and the [p]rior [a]ction completely diverge" because each could blame the other for defects in the title abstract. Whether Henderson and Hodges are privies is a more difficult issue than whether the other two requirements for applying

9

res judicata are met, because usually parties are in privy with each other because both represent rights to the same property. See *Dalton Paving & Constr. v. South Green Constr. of Ga.*, 284 Ga. App. 506, 508 (643 SE2d 754) (2007) ("[T]he term privity denot[es] mutual or successive relationship to the same rights of property.") But that is a simplistic view of the doctrine of privity, which is broader than simply whether parties share a property interest.

"A privy is generally defined as one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." (Citation and punctuation omitted.) *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 421 (1) (627 SE2d 549) (2006) (addressing res judicata bar). "There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel, since privity depends upon the circumstances. Privity may … be established if the party to the first suit represented the interests of the party to the second suit." (Citations and punctuation omitted.) Id. at 422 (1).

In its complaint, ALR contended that Coleman Talley sought a title commitment from Fidelity National Insurance Company, that Fidelity retained Hodges to provide the necessary title abstract, and that Hodges in turn retained

10

Henderson to prepare the title abstract. Thus, ALR contended that the chain of responsibility for failing to prepare a proper title abstract flowed from Coleman Talley to Fidelity National to Hodges to Henderson. ALR was aligned against Hodges in the prior case and is aligned against Henderson in this case. In its statute of limitation argument, ALR contends that the six-year statute for written contracts for professional services might apply in this case based on "the business relationship between R. E. Hodges, Fidelity National, and the Henderson [d]efendants." ALR further argues that "[d]iscovery could disclose the existence of a written agreement" for professional services to which ALR was a third-party beneficiary. In other words, Henderson's liability could flow from a written contract with Hodges, if one existed, because Hodges hired Henderson to prepare the title abstract.

But regardless of whether Hodges and Henderson could conceivably be opposing parties in a contract dispute between each other or could blame each other for any malpractice that occurred, for purposes of this lawsuit, ALR is claiming to be the third-party beneficiary of a possible written contract between Hodges and Henderson, and therefore the interests of Hodges and Henderson are aligned in both the prior litigation and the current one. Henderson's liability is premised upon him having a contract with Hodges, and the prior action against Hodges was dismissed

11

because the statute of limitation had run before suit was filed. If Hodges is not liable because the statute had run, then Henderson could not be liable either.

"[I]t is not required that all the parties on the respective sides of the litigation in the two cases shall have been identical, but it is sufficient as to identity of parties if those by and against whom the defense of res judicata is invoked in the latter case were real parties at interest or privies as to the controversy in the former case." *Darling Stores Corp. v. Beatus*, 199 Ga. 215 (3) (33 SE2d 701) (1945). We conclude that, under the unique facts and circumstances present here, Hodges and Henderson were in privity for collateral estoppel purposes. See *Dalton Paving*, 284 Ga. App. at 508 (developer, owners, and property manager were "in essence third party beneficiaries of the subcontract" between plaintiff general contractor and defendant subcontractor, who previously arbitrated claim over contract).

(c) *Adjudication on the merits.* The third prerequisite for the application of the doctrine of collateral estoppel requires that the prior claim be adjudicated on the merits by a court of competent jurisdiction. *Body of Christ*, 287 Ga. at 486. The trial court in the previous case granted Hodges' motion to dismiss based on the expiration of the statute of limitation. While ALR argues that this dismissal did not constitute an adjudication on the merits, we disagree. "The statute of limitation is an affirmative

12

defense which acts as a bar to recovery. Dismissal based upon the expiration of the statute of limitation is in essence dismissal for failure to state a claim upon which relief can be granted. A dismissal on this ground is a decision on the merits." (Citations omitted.) *Towe v. Connors*, 284 Ga. App. 320, 321 (644 SE2d 176) (2007).

The question for collateral estoppel purposes is whether the previously litigated issues were *essential* to the judgment entered in the prior action. If so, those issues cannot be litigated again, and as discussed in Division 1 (a), if the claims in a subsequent case rely on an issue previously decided, then the collateral estoppel bar applies. Although we held in *Black Island Homeowners Assn. v. Marra*, 263 Ga. App. 559, 562-563 (2) (588 SE2d 250) (2003), that a dismissal based on the statute of limitation did not bar a subsequent case on collateral estoppel grounds, the facts reveal why the analysis in that case does not apply to the one at bar. In *Black Island*, a prior claim against a homeowners' association for mowing uninhabited areas in violation of restrictive covenants was dismissed on statute of limitation grounds because the mowing had begun more than two years before suit was filed. Id. at 561. The trial court found that a subsequent suit to enjoin the association from mowing was not barred by collateral estoppel, and we agreed, because "the trial court did not need to reach the merits of the owners' initial mowing claim in order to find that

13

claim barred by the statute of limitation." Id. at 562-563. Because "[m]owing is a distinct, separate act that constitutes an alleged breach each time it occurs," the statute of limitations dismissal in the prior case did not resolve any issue essential to the subsequent case, which was not barred by collateral estoppel. Id. at 561. In contrast, the running of the statute of limitation is an issue essential to ALR's claims against Henderson in this case related to the 2006 title search.

"No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment. It is the body of a case and not certain of its limbs only, that the final judgment takes hold upon." *Perry v. McLendon*, 62 Ga. 598, 604-605 (1879). As all three prerequisites to finding this action barred by the doctrine of collateral estoppel have been met in this case, the trial court did not err in granting judgment to the defendants.

2. ALR's remaining enumeration of error regarding the trial court's finding that the statute of limitation had run on this claim is moot in light of our ruling in Division 1.

*Judgment affirmed. Ray and McMillian, JJ., concur in judgment only.*